REGINALD A. CLARKE, Appellant, *v.* SELBEN APARTMENTS, INC., and Others, Defendants, Impleaded with CITY IRON WORKS, INC., and Others, Respondents, and KEYSTONE ASSOCIATES, INC., Appellant.

Second Department, February 8, 1929.

*Myron Wisoff* [*Meyer C. Loskowitz* with him on the brief], for the plaintiff, appellant.

*Samuel Silbiger* [*Harry Aaron* with him on the brief], for the appellant Keystone Associates, Inc.

*Raymond Gitlin* [*William Walzer* with him on the brief], for the respondents City Iron Works, Inc., and others.

The parties having stipulated in writing that this case may be decided by a court of four justices, the decision is as follows: Judgment unanimously affirmed, with one bill of costs to respondents who appeared and filed a brief, upon opinion of Mr. Justice JOHNSTON at Special Term.

Present — YOUNG, KAPPER, SEEGER and CARSWELL, JJ.

The following is the opinion of the court below:

JOHNSTON, J. Plaintiff seeks to foreclose a $30,000 demand mortgage executed by defendant Selben Apartments, Inc., on February 8, 1927, and recorded February 9, 1927, covering certain premises on South Oxford street. No defense has been interposed by the mortgagor. The answering defendants are lienors whose claims total approximately $25,000. They attack the mortgage because it (a) is without consideration; (b) was executed and delivered for the purpose of making a preferential payment to Audley Clarke Company, of which the mortgagee is a shareholder and director, and (c) was executed and delivered when the mortgagor was insolvent and for the purpose of hindering, delaying and impeding the rights of the answering defendants and other creditors of the mortgagor. A close study of the evidence satisfies me that the following facts have been established: At the time of the execution of the Clarke mortgage the property was incumbered by four mortgages, a first of $75,000, a second of $25,000, a third of $20,000 and a fourth of $13,000 which has been reduced to $8,000. Two builders, Krown and Epstein, owned all the capital stock of three separate corporations known as Practical Builders, Inc.,

Selben Apartments, Inc., and Mingert Realty Co., Inc. The Selben Apartments, Inc. (hereinafter called Selben), was the owner of two building operations, one at Garfield place and Sixth avenue known as the " Garfield place job " and the other at South Oxford street known as the " Selben job." The Mingert Realty Co., Inc., was the owner of a building operation at Forty-third street and Fifteenth avenue known as the " Mingert job." The Practical Builders, Inc., was a general contractor and acted as such on the Garfield place and Mingert jobs. Although these corporations were engaged in the building business and had dealings with each other their respective operations were separate. Each was a distinct entity and in no respect so identical as to justify a holding that the debts of one were equivalent to the debts of the other. Audley Clarke Company is engaged in the building material supply business. It is a close corporation consisting of plaintiff and members of his family. This company supplied building material to the various jobs. At the time of the making of the Clarke mortgage the " Selben job " was substantially complete, and the books of the Audley Clarke Company show that there was owing to it on the various jobs of the three corporations a total sum of $28,581.63, of which only the sum of $25.65 was due from Selben, together with four notes which had not yet matured. Prior to the making of the Clarke mortgage Selben sold its Garfield place building and received as part payment a mortgage for $75,000 on other property. Mr. Krown applied to plaintiff for a loan on this mortgage and informed him that Selben then owed approximately $55,000. Plaintiff investigated this mortgage, learned it was worthless and refused to advance money on it. Shortly thereafter plaintiff commenced to press Krown and Epstein and the several corporations for payment of their accounts and threatened to file liens, and on February 8, 1927, the bond and mortgage in question was executed and delivered. The evidence clearly shows plaintiff was the moving spirit in the creation of this bond and mortgage. Plaintiff, with a bank balance of approximately $2,000, issued to Selben as an apparent consideration for the bond and mortgage, three separate checks for the sums of $10,000, $13,500 and $6,500. The $10,000 check was indorsed by Selben, returned to plaintiff and deposited in his personal account. The $13,500 check was indorsed by Selben to Krown and Epstein, who in turn indorsed it to Audley Clarke Company which deposited it in its account. The $6,500 check was indorsed by Selben and returned to plaintiff who indorsed it to Audley Clarke Company, which deposited it in its account. On the same day there followed a series of checks between plaintiff and Audley Clarke Company and entries in the latter's books of account

showing credits and loans to plaintiff and others. The testimony, however, clearly shows that there never were any loans made for the Audley Clarke Company to plaintiff; that when all the checks had passed and all the book entries were made plaintiff had given nothing to the Audley Clarke Company and the Audley Clarke Company had given nothing to plaintiff and that neither plaintiff nor Audley Clarke Company had given a single dollar to Selben. This fact was elicited during plaintiff's cross-examination and is demonstrated by the journal of Audley Clarke Company which contained an entry purporting to show that at the end of the year 1927 there was marked off to reserve for bad debts $24,500 supposedly due Audley Clarke Company from plaintiff. This sum includes $20,000 entered on the company's books as a loan to plaintiff on February 8, 1927, the date when the bond and mortgage herein were delivered. The evidence also shows the four unmatured notes of Selben had never been surrendered or returned as part consideration for the mortgage but were charged at maturity in the Audley Clarke Company books against Selben. There is no evidence that there was any consideration moving from plaintiff and/or the Audley Clarke Company. In fact when all was said and done Selben received nothing for the bond and mortgage but was merely placed in the position of guarantor of the debts of the various other corporations of Krown and Epstein to the Audley Clarke Company for which company plaintiff acted as a dummy throughout the whole transaction. Selben's debts remained in existence. The evidence also shows that at the time of the making of the bond and mortgage the liabilities of Selben amounted to $235,000 and the assets, consisting of the property on South Oxford street amounted to $180,000, leaving a deficiency of $55,500. This does not include plaintiff's mortgage of $30,000 and the Keystone mortgage of $20,000. If the actual selling price of the South Oxford street property is taken as its true value the deficiency would be about $117,500 and this deficiency could not be wiped out even if the claim of $42,000 due Selben from the Practical Builders, Inc., and the $75,000 mortgage held by it be given full value although both were worthless. The evidence also shows that this deficiency was known to plaintiff. Plaintiff's knowledge of the financial condition of Selben is further borne out by the conduct of plaintiff in aiding Mr. Krown to divert $3,000 of the funds of the Mingert Realty Co., Inc. At that time Mr. Krown informed plaintiff that Selben was sorely pressed and could no longer borrow from the Mingert Realty Co., Inc., because the Keystone Associates refused to countersign checks to be used for purposes other than to pay for work or material on the Mingert

job. Audley Clarke Company, acting through plaintiff, thereupon received the check for $3,000 of the Mingert Company made payable to its order and in turn issued its check for a like amount to Selben. It further appears that after the sale of the Garfield place property and in December prior to the execution of the Clarke mortgage Selben was compelled to issue stop orders on numerous promissory notes thereafter maturing, and Krown testified that after he gave Clarke the mortgage he had nothing else for other creditors, and that Selben " was broke." Therefore, it is clear that at the time plaintiff received the mortgage Selben was unable to meet its obligations and was insolvent and that uch condition was known to plaintiff. There is no doubt the purpose of the transaction in the minds of both parties was to prefer Audley Clarke Company as creditor of the various corporations to the detriment of Selben and its other creditors, both present and future. Certainly, the effect of the transaction, if carried out, would be to hinder, delay and defraud the existing and future creditors of Selben. Plaintiff's mortgage is void. It was made and executed in violation of the Stock Corporation Law (§ 15) and of the Debtor and Creditor Law (§§ 270–281, as added by Laws of 1925, chap. 254); it is without consideration; was executed at a time when the mortgagor was insolvent and the mortgagee knew of its insolvency, and with the intent of preferring paintiff's *alter ego* over other creditors of the mortgagor and for the purpose of hindering, delaying and impeding the rights of other creditors, including the answering defendants. (*Ward* v. *City Trust Co.*, 192 N. Y. 61; *Cole* v. *Millerton Iron Co.*, 133 id. 164; *Morris* v. *Wiener Co.*, 65 Misc. 18; 3 Thomp. Corp. [3d ed. 1927], § 2290; 4 id. § 2910.) Plaintiff's contention that a lien might have been filed for the debt secured by the mortgage, and thus he could have secured a preference by varying the form of the security, cannot avail him to validate the mortgage. (*Lane & Son, Inc.*, v. *County of Westchester*, 248 N. Y. 298.) After issue was joined upon motion of the answering defendants an order was made at Special Term impleading the Keystone Associates, Inc., which held a mortgage covering the premises incumbered by the Clarke mortgage and the answering defendants' liens. This mortgage was for $20,000 and was executed and delivered on January 20, 1927, by Selben to Keystone Associates. The answering defendants ask that this mortgage be declared null and void upon substantially the same grounds as are urged against the validity of the Clarke mortgage. The Keystone Associates, Inc., was in the business of loaning money to builders. At the time of the execution of the Keystone mortgage the Mingert job was far from complete. The Practical

Builders, Inc., had borrowed approximately $42,000 from Selben and Selben had borrowed about $62,000 from the Mingert Realty Co., Inc. The Mingert Company was indebted to Practical Builders, Inc., for about $50,000 for obligations incurred to the Practical Builders, Inc., as contractor. In December, 1926, Mr. Krown consulted Mr. Loskowitz, attorney for the Keystone Associates, Inc., and Mr. Kossoy, an officer and principal stockholder of Keystone Associates, Inc., and told them of his financial troubles and about the worthlessness of the $75,000 mortgage heretofore referred to. Mr. Loskowitz advised Mr. Krown to bring an action to set aside this mortgage. The action was brought, but it did not relieve the situation. Mr. Krown then applied to Loskowitz and Kossoy for a loan of $40,000 to finish the Mingert job. They visited the operation and subsequently informed Mr. Krown that they could advance but $20,000. As this sum was insufficient, Mr. Kossoy suggested that if Selben would execute a mortgage on its building on South Oxford street for $20,000 as additional security it would make the loan, and this was agreed, but the loan was to be upon the condition that all of the moneys to be advanced be used solely for the payment of work to be performed upon the Mingert job. To insure the carrying out of this condition a joint control of the bank account of Mingert Realty Co., Inc., was to be given Keystone Associates, Inc. On January 20, 1927, two bonds and mortgages were executed and delivered, one made by Selben for $20,000 and the second made by Mingert Realty Co., Inc., for $30,000 to Keystone Associates, Inc. Although the loan was actually for $40,000, $50,000 in mortgages were put on record. A receipt for $20,000 was written on the Selben bond and a receipt for $20,000 was indorsed on the Mingert bond. The only consideration passing, as is shown by the evidence, was a check for $16,800, payable to the order of Meyer C. Loskowitz and simultaneously indorsed to Mingert Realty Co., Inc., and deposited in its account. The Mechanics Bank, where the Mingert Company had its account, was then authorized by resolution not to honor any checks of the Mingert Company unless countersigned by an agent of Keystone Associates, Inc. Thereafter advances were made by checks amounting to $20,000, on the stub of each of which is a notation referring to the Forty-third street and Fifteenth avenue job of Mingert Realty Co., Inc. Nothing was actually received by Selben and no check was ever given to it. The books of Selben contain no entry of a debt of $20,000 as represented by the bond and mortgage and the books of the Mingert Realty Co., Inc., show no credit to Selben. There was no proof that the Keystone Associates and/or their representatives knew that Selben

was indebted to Mingert Realty Co., Inc., for $62,000 or any other sum. It also appears that later the Mingert Realty Company refused to loan $3,000 to Selben directly, but that the Mingert Company gave a check for $3,000 payable to the Audley Clarke Company and Audley Clarke Company thereupon gave its check for the $3,000 to Selben as heretofore pointed out. Although there is no evidence showing that Selben received any consideration for the $20,000 bond and mortgage, it is conceded that Keystone Associates, Inc., or Mr. Loskowitz paid off an $8,500 mortgage on Selben's property. Even this payment was not made through Selben but was receipted on Mingert Realty Company's bond. The ledger of the Keystone Associates showed a caption " *Krown and Epstein Loan, So. Oxford St. and 43rd St. and 15th Ave.*" but the words " *So. Oxford St.*" were in different ink from the other items and had not darkened as had the other items and appeared to be of a later date. It is shown by the evidence that the Keystone Associates, Inc., regarded the loan as that of the Mingert Realty Co., Inc., alone. There was no record on Selben's books of any loan from the Keystone Associates, while the Mingert Company continued to carry the debt due it from Selben, thus indicating that it had received no money on behalf of Selben from Keystone Associates, Inc. I am not persuaded, as has been urged — not by the mortgagor but the mortgagee — that the mortgage was made by Selben to secure a loan to it, the proceeds of which were to be distributed among its creditors, including the holder of the $8,500 mortgage. I am convinced that the $8,500 mortgage was satisfied out of the money paid by Keystone Associates, Inc., so the mortgagee would have more ample security for the loan made to Mingert Realty Co., Inc. From the evidence it is clear that the whole purpose and sole intent for making the Keystone mortgage were to secure and guarantee the loan which in fact was made *to* Mingert Realty Co., Inc. The Keystone Associates, Inc., and/or their representatives were consulted about the financial troubles of Selben and were informed that the $75,000 mortgage was worthless and that the corporation " was broke." I find, therefore, that the Keystone Associates, Inc., had knowledge of the insolvency at the time it received its mortgage. I find that the reasons that render the Clarke mortgage null and void apply to the Keystone mortgage, but the payment of the $8,500 mortgage having inured to the benefit of all creditors, including the answering defendants, equity will be served by the subrogation of Keystone Associates, Inc., to the rights of the mortgagee of that mortgage to the amount of such payment. An extra allowance will be granted defendant lienors on the submission of affidavits showing the work done by counsel. Submit findings.